SCOTT, J.   The action is for slander, and alleges that defendant spoke certain words, specified in the complaint, of and concerning the plaintiff in his occupation and character as a professional man in research work in physiological chemistry.   There are no special damages alleged, and the question involved, therefore, is whether or not the words thus spoken by the defendant, which in substance charged the plaintiff with bad manners and with being a trouble maker in the laboratory in which he worked, are libelous per se.   In our opinion they are not.

The question in such a case is whether or not the words spoken have a tendency to hurt and are calculated to injure the plaintiff in the business or occupation which he is following at the time the words are said and as to which he claims to have been damaged.   As was said in Moore v. Francis, 121 N. Y. 199, 23 N. E. 1127, 8 L. R. A. 214, 18 Am. St. Rep. 810:

" 'Whatever words have a tendency to hurt or are calculated to prejudice a man who seeks his livelihood by any trade or business, are actionable.'   When proved to have been spoken in relation thereto, the action is supported."

We can find nothing in the words complained of which have any bearing at all upon the character of the plaintiff as a scientific man engaged in research work.   They are not at all like the words used in the case of Moore v. Francis, supra, where the occupation of the plaintiff was that of a bank teller, and the libelous words charged him with being insane and out of his mind.   Naturally such a charge would have a tendency to prevent his employment in a position of teller in a bank, but here the only thing which can fairly be spelled out of the words charged against the defendant is that he was accused of bad manners in not getting on with people with whom he worked in the laboratory, and of having insulted certain of those persons.   It seems quite clear that these words contained no reflection upon his character as a scientific man, and are not calculated to injure him in his profession, or to prevent his employment as an expert in his particular line.   They are such words as are spoken of persons every day, and, unless the occupation in which a man is engaged is of such a character that suavity and urbanity are necessary, they cannot be said to be actionable per se.

The judgment appealed from must be reversed, the demurrer sustained, and the complaint dismissed, with costs in this court and the court below, with leave to plaintiff to amend his complaint on payment of said costs within 20 days.   All concur.

---

(173 App. Div. 769)

NEW YORK LIFE INS. & TRUST CO. v. WELLS et al.

(Supreme Court, Appellate Division, First Department.   July 10, 1916.)

WILLS ⬥498—CONSTRUCTION—DISPOSITION OF RESIDUARY ESTATE.

Where testator's will gave the principal sum of $100,000 on the death of his wife to his children and stepdaughter in equal shares, to be divided and distributed in the same manner as directed in the eighth clause of

⬥For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

the will, which directed that the residuary estate be divided among the children and stepdaughter in equal shares, their shares to be held in trust for their lives and after the death of each to go to the issue and descendants of the one so dying, the children of a deceased child or the stepdaughter to take only the share the parent would have taken or been entitled to if living, the share in the residue of the deceased stepdaughter went, by representation, to her four children, and did not go to them and her four grandchildren per capita.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1087–1089; Dec. Dig. ☞498.]

Appeal from Special Term, New York County.

Action by the New York Life Insurance & Trust Company, as trustee, etc., against Edmund B. Wells, individually and as administrator, and others, impleaded. From an interlocutory judgment construing the will of Joseph E. Bulkley, deceased, several of the defendants appeal. Judgment and findings reversed, and decree and findings directed in accordance with the opinion.

Argued before CLARKE, P. J., and McLAUGHLIN, SCOTT, SMITH, and PAGE, JJ.

Thomas D. Hewitt, of New York City, for appellant Wells.

Frank T. Warburton, of New York City, for appellant Warburton.

C. Andrade, Jr., of New York City, for appellants Cummings and Entz.

Francis M. Applegate, of New York City, for respondent.

PAGE, J. Joseph E. Bulkley died in 1879, leaving a will, in which he made the following distribution of his residuary estate:

"Eighth. As soon after my death as practicable, I authorize and direct my executors, the survivors and survivor of them, to allot, divide, and distribute all the rest, residue and remainder of my estate or so much thereof as can then under the provisions of this my will be lawfully divided and distributed to and between my children, Edmund W. Bulkley, Justus L. Bulkley, Josephine Barnes, wife of Theodore M. Barnes, Mary Entz, wife of Ferdinand Entz, Marguerite Bulkley and my stepdaughter Elizabeth Wells, wife of George A. Wells, their heirs, executors, administrators and assigns, in equal shares and proportions, that is: One-sixth share to each. The shares or portions of my two sons to be paid them in cash and the shares or portions of my daughters and of my stepdaughter to be retained by my executors whom, or such of them as shall act, I hereby constitute and appoint trustees for my said daughters and stepdaughter respectively, to be invested by them in their names as such trustees in first class productive securities—the interest and income from such investments to be paid over to my said daughters and stepdaughter respectively during their natural lives as and when received by said trustees. On the decease of each of my said daughters and of my stepdaughter I give, devise and bequeath the principal so set apart for the share of such daughter or stepdaughter dying to the issue and descendants of the one so dying.

"In the event of the death of any or either of my said children or of my said stepdaughter without leaving lawful issue or descendants, then I give, devise and bequeath the same to the survivor or survivors of my said children and stepdaughter, their respective heirs and assigns, so to be divided and distributed between them that in all cases the children of a deceased child or stepdaughter shall take only the share the parent would have taken or been entitled to if living."

One son, Edmund W. Bulkley, died before his father, leaving no issue. One daughter, Josephine Barnes, died in April, 1915, leaving

two unmarried children and no issue of any deceased child. Her share was divided between her two children. The stepdaughter, Elizabeth L. Wells, died in July, 1915, leaving four children, the defendants Edmund B. Wells, George A. Wells, Mary L. Keyes, and Elizabeth M. Warburton, and four grandchildren, the defendants Edgar Lawrence Keyes, George A. Wells, Jr., Helen Wells, and Frank Wells Warburton. The defendant Edmund B. Wells is unmarried.

The immediate question upon which the trustee asked instructions is whether the share of Elizabeth L. Wells now goes by representation to her four children, or whether it goes to her four children and her four grandchildren per capita. If it is to be divided between the children of Elizabeth L. Wells, each would take one-fourth of her share. If per capita, her grandchildren share equally with their living parents and their uncle Edmund B. Wells, each taking one-eighth.

The judge at Special Term adopted the latter construction. In this I am of opinion he was clearly wrong. An examination of the entire will shows that it was the testator's intention to make an equality of distribution between his children, treating his stepdaughter, Elizabeth Wells as a child. In the fifth clause of the will, it is provided:

"The principal sum of $100,000 I give and bequeath on the death of my said wife to my children and to my stepdaughter hereinafter named in equal shares to be divided and distributed to and among them in the same manner as hereinafter in the eighth clause of this my will directed as to the residue of my estate." 

And in the sixth clause, upon the death of the life tenant, a similar provision is made for the distribution of the bequest provided for in that clause, and in the last portion of the eighth clause recited above, as to the share of any of his children or his stepdaughter who shall die without leaving lawful issue or descendants, provides that such share is to be divided and distributed between them; that in all cases the children of the deceased child or stepdaughter shall take only the share the parent would have taken or been entitled to if living, and in my opinion the use of the word "issue" and "descendants" of the one so dying used in the former portion of the eighth clause shows the intention of the testator to distribute the share to the children of the one so dying, or in case of the death of the child leaving issue to the descendants of such child the proportion that the parent would have taken, and therefore that the interlocutory judgment should be reversed and the contrary findings should be reversed.

The two surviving daughters of the testator, Mary L. Entz and Margaret Bulkley Reed, and the children and grandchildren of Mrs. Entz, have been made parties and a construction of the will is desired by the trustees as to the distribution of their share in case of their death. This has been disposed of in the foregoing considerations, and distribution should be made in the same manner as stated for the distribution of the share of Elizabeth L. Wells.

Settle findings and decree in accordance herewith. Settle order on notice. All concur.